**FILED**
**Jun 18, 2025**
**12:29 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| ANAIT SUDZHYAN, | ) | Docket No. 2024-60-6879 |
| Employee, | ) | |
| v. | ) | |
| YMCA OF MIDDLE TENNESSEE, | ) | State File No. 11285-2024 |
| Employer, | ) | |
| And | ) | |
| ACCIDENT FUND GENERAL INS. | ) | Judge Joshua D. Baker |
| CO., | ) | |
| Carrier. | ) | |

---

## EXPEDITED HEARING ORDER GRANTING BENEFITS

---

At a May 21, 2025 expedited hearing, Ms. Sudzhyan requested psychiatric treatment and temporary disability benefits. For the reasons below, the Court holds she is likely to prevail at a final hearing on her entitlement to the requested benefits. However, due to insufficient information to calculate an award of temporary disability benefits, that request is denied at this time.

### Claim History

Ms. Sudzhyan worked with disabled children for YMCA and testified about its challenges. On February 12, 2024, a child with cognitive and behavioral difficulties pulled Ms. Sudzhyan's hair while being restrained. Shortly after that, Ms. Sudzhyan took some children to the gym, where another child forcefully threw a basketball against the left side of her head while she was distracted.

YMCA accepted Ms. Sudzhyan's head-injury claim, offered a panel, and authorized treatment. The provider ultimately recommended a neurologist for Ms. Sudzhyan's headaches, back and neck pain, blurred vision, dizziness, ringing in the right ear, memory loss, panic attacks, and anxiety.

1

According to Ms. Sudzhyan, YMCA authorized treatment with neurologist Dr. W. Garrison Strickland for two visits. First, in July Dr. Strickland noted her "headache and other symptoms following work injury" and recommended an "MRI brain to assess for lesions." He added, "Anxiety was pre-existing[,] and such an injury which she describes would not be expected to cause long-standing change in anxiety[,] which I encouraged her to discuss with her PCP." He would have "expected symptoms to resolve within 1-2 months following injury as long as the MRI does not show an unexpected traumatic lesion."

Second, in September the brain MRI did not reveal any lesions, so Dr. Strickland referred Ms. Sudzhyan to a psychiatrist. He assessed "a mild head injury" with "no evidence of permanent brain injury." He wrote, "Her primary difficulty is psychiatric in nature. Therefore, I referred her to a psychiatrist for further evaluation and treatment. I advised her to be off work until she sees a psychiatrist."

Both Ms. Sudzhyan and her son testified about the after-effects of her head injury. Her son, a service member, obtained emergency leave from deployment to care for her in September because she could not function well enough to work. He said he noticed a marked difference in her memory, cognitive ability, and her emotional state between when he last saw her in December 2023 and when he returned. She could not think well enough to drive, could not finish sentences or think decisively, and experienced anxiety and panic attacks, which produced physical symptoms like spiking blood pressure.

Ms. Sudzhyan acknowledged suffering from anxiety after her husband's accidental and unexpected death about ten years ago. But she described herself as healed until this work accident, saying she had not needed anxiety medication for several years.

Ms. Sudzhyan saw psychiatrist Dr. Tianlai Tang in August 2024 on a referral from her primary care doctor, Dr. John Williams. Dr. Tang diagnosed post-traumatic stress disorder, panic disorder, and anxiety disorder "from TBI [traumatic brain injury] this year in Feb. That exacerbated her existing anxiety. She started to have PTSD with panic attacks since." Dr. Tang recommended psychiatric testing and treatment that Ms. Sudzhyan said she cannot afford.

Meanwhile, on August 21, 2024, Dr. Williams took Ms. Sudzhyan off work for "PTSD, high anxiety and panic attacks" until October due to "work related injury complications from concussion." In October, he again removed her from work until January 1, 2025, for "PTSD from head injury," noting she needed "cognitive behavioral therapy before return to work."

**Findings of Fact and Conclusions of Law**

Ms. Sudzhyan must prove she is likely to prevail at a final hearing on her requested benefits. Tenn. Code Ann. § 50-6-239(d)(1) (2024); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). She requested psychiatric treatment and temporary disability benefits from July 2024 to present.

*Medical benefits*

The Workers' Compensation Law requires that "[a]ll psychological or psychiatric services available [by statute] shall be rendered only by psychologists or psychiatrists and shall be limited to those ordered upon the referral of physicians authorized under subdivision (a)(3)." Tenn. Code Ann. § 50-6-204(h). Those referrals are presumed medically necessary. *Id*. at 204(a)(3)(H).

YMCA argued the context of Dr. Strickland's referral excused its statutory obligation to honor it, since the doctor prefaced his referral in an earlier visit by writing that Ms. Sudzhyan's "[a]nxiety was pre-existing."

However, under similar circumstances, where an employee alleged a mental injury from physical head trauma at work, the Appeals Board directed that an injured worker is not required to prove medical causation or medical necessity to obtain an evaluation from a specialist when an authorized physician has made a referral. *Beech v. G4S Secure Solutions (USA), Inc.*, 2020 TN Wrk. Comp. App. Bd. LEXIS 71, at *9 (Dec. 16, 2020). As the Board wrote in *Beech*:

> The relevant issue is whether Employee came forward with sufficient proof from which the trial court could conclude a panel-selected treating physician made a referral to a specialist . . . not whether Employee has come forward with sufficient evidence . . . that the referral was medically necessary or that his alleged psychological injury is causally related to the work incident.

Given this, the Court rejects YMCA's argument that Ms. Sudzhyan is not entitled to a psychiatric referral. Her assertion that Dr. Strickland was an authorized treating physician is unrefuted. Therefore, the doctor's referral is presumed medically necessary, and YMCA offered no proof to rebut that presumption.

Notably, Dr. Strickland recommended a psychiatric evaluation because he does not practice that specialty and has insufficient expertise to diagnose, evaluate, or determine medical causation for a psychiatric injury. So, the Court holds that Ms. Sudzhyan is likely to prevail in proving a panel-selected treating physician made a referral to a psychiatrist.

Without an authorization for a psychiatric evaluation, Ms. Sudzhyan obtained an evaluation and recommended treatment from Dr. Tang. "An employer who elects to deny a claim runs the risk that it will be held responsible for medical benefits obtained from a medical provider of the employee's choice[.]" *Barrett v. Lithko Contracting*, 2016 TN Wrk. Comp. App. Bd. LEXIS 93, at *8 (Dec. 8, 2016). Thus, the Court holds that Dr. Tang is designated the authorized treating physician for any reasonable and necessary psychiatric treatment related to Ms. Sudzhyan's work injury.

*Temporary disability benefits*

Ms. Sudzhyan also requested temporary disability benefits from July 2024 to present. To qualify, "an employee must establish: (1) that he or she became disabled from working due to a compensable injury; (2) that there is a causal connection between the injury and the inability to work; and (3) the duration of the period of disability." *Smith v. TrustPoint Hosp., LLC,* 2021 TN Wrk. Comp. App. Bd. LEXIS 1, at *21-22 (Jan. 6, 2021).

Applying this framework, Ms. Sudzhyan presented opinions from two doctors, who observed a disability and suggested its duration: Dr. Williams removed her from work from August 21, 2024, through January 1, 2025; and Dr. Strickland stated in September 2024 that she should not return to work until receiving a psychiatric evaluation.

About the causal connection between work and her disability, Dr. Williams related her disability to her "work-related injury complications from concussion." Further, Dr. Tang observed in her medical records that Ms. Sudzhyan's diagnoses resulted from head trauma at work, when she was hit forcefully in the head by a basketball.

Based on these facts, the Court holds Ms. Sudzhyan is likely to prevail on temporary disability benefits at a final hearing. However, the Court cannot calculate an award without sufficient proof of how much YMCA already paid in temporary disability benefits, when those benefits were paid, or an accurate compensation rate. Therefore, the request for an award of temporary disability benefits is denied at this time.

IT IS ORDERED:

1. YMCA shall furnish a psychiatric evaluation and treatment from Dr. Tang as the authorized treating physician.

2. The request for temporary disability benefits is denied at this time due to insufficient proof of Ms. Sudzhyan's compensation rate and insufficient proof of an amount already paid in temporary disability benefits.

3. A status hearing is set for **Monday, September 8, 2025, at 10:30 a.m. Central Time.** You must call 615-741-2113 to participate.

4. Unless an interlocutory appeal of the expedited hearing order is filed, compliance with this order must occur no later than seven business days from the date of entry of this order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Employer must submit confirmation of compliance with this order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this order. Failure to submit confirmation within seven business days may result in a penalty assessment for non-compliance. For questions regarding compliance, contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED June 18, 2025.**

_____
**JUDGE JOSHUA D. BAKER**
**Court of Workers' Compensation Claims**

**Appendix**

<u>Exhibits</u>

1. Medical records
2. Affidavit of Anait Sudzhyan
3. Signed C-42 form choosing Vanderbilt
4. First Report of Injury form of YMCA

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of this order was sent as indicated on June 18, 2025.

| Name | Certified Mail | Regular mail | Email | Sent to |
|------|----------------|--------------|-------|---------|
| Anait Sudzhyan, Employee | | | **X** | sudzhyan.anna@gmail.com |
| Gordon Aulgur, Employer's attorney | | | **X** | Gordon.aulgur@afgroup.com samantha.gutierrez@afgroup.com |

_____

**PENNY SHRUM**
**Clerk, Court of Workers' Compensation Claims**
WC.CourtClerk@tn.gov



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   - ➤ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   - ➤ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____       ☐ Motion Order filed on _____

☐ Compensation Order filed on_____       ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee
Appellee's Address: _____ Phone: _____
Email: _____
Attorney's Name: _____ BPR#: _____
Attorney's Email: _____ Phone: _____
Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*